UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

              - v -                    :          **MEMORANDUM DECISION**

JOSEPH SHERESHEVSKY,                    :          08 Cr. 1092 (DC)

               Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          LEVITT & KAIZER
               Attorneys for Defendant
                    By:    Richard Levitt, Esq.
               40 Fulton Street, 23rd Floor
               New York, NY  10038

               GEOFFREY S. BERMAN, Esq.
               United States Attorney for the
               Southern District of New York
                    By:    Kevin Mead, Esq.
                          Assistant United States Attorney
               One Saint Andrew's Plaza
               New York, NY  10007

CHIN, Circuit Judge:

        On February 3, 2011, defendant Joseph Shereshevsky pleaded guilty to

securities fraud and related crimes.  On July 18, 2011, I sentenced him to a term of

imprisonment of 262 months.  Mr. Shereshevsky now moves to reduce his sentence to

time served pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act (the

"FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  He contends that he suffers

from "myriad maladies," as a consequence of which "he is at an unusually high risk of dying from COVID-19."  Def. Mem. at 2, 21.  Accordingly, he contends that his health conditions in combination with the risk of contracting COVID-19 in prison constitute "extraordinary and compelling" circumstances warranting compassionate release.  *Id.* at 22.

        For the reasons set forth below, the motion is denied.

## *BACKGROUND*

1.     *Shereshevsky's Crimes*

        Mr. Shereshevsky and his co-defendant Steven Byers engaged in "a massive Ponzi scheme" from 2003 until 2008.  *See United States v. Shereshevsky*, No. 08 Cr. 1092-02 (DC), 2015 WL 13229502, at *1 (S.D.N.Y. Dec. 16, 2015).  They operated WexTrust Capital, a private equity fund that purportedly specialized in real estate investment and specialty finance opportunities, raising money from investors by issuing private placement memoranda that contained material misrepresentations and omissions.  *Id*.  The documents failed to disclose, for example, that Mr. Shereshevsky had a criminal background, including for fraud.  *Id*.  Portions of the invested funds were diverted for purposes other than as represented in the placement memoranda.  *Id*.  Indeed, more than $5 million of investor funds was used by Mr. Shereshevsky, his family, and entities he controlled.  Gov't Letter filed May 22, 2020, in Opp. to Motion ("Gov't Opp.") at 2; Sent. Tr. at 24.

The loss amount, for Guidelines purposes, was $9.2 million and more than 90 victims were defrauded, most of whom were individual investors who had invested relatively modest amounts with defendants.  *Shereshevsky*, 2015 WL 13229502, at *1; Gov't Opp. at 2; Sent. Tr. at 50 (The Court:  "Many of the investments were for modest amounts: $50,000, $100,000, not a lot for some people, but for many people it is their life savings, or it was money that was being saved to send their kids to college or in the instance of one person they had been planning on going on a trip for many years.  In a way, it is the shattering of dreams.").  In fact, the total losses were much greater and many more individuals and entities were victimized.  *See SEC v. Byers*, 590 F. Supp. 2d 637, 639 (S.D.N.Y. 2008) (in civil action, Securities and Exchange Commission (the "SEC") alleged that Shereshevsky and Byers engaged "in a Ponzi scheme that purportedly defrauded more than one thousand investors of approximately $255 million," and that involved "a massive fraud involving a complex web of some 240 Wextrust affiliates operating in the Middle East, Africa, and the United States"); *see also* Sent. Tr. at 50 ("I received letters from 80 victims, and I am confident that there are many victims who did not write.")

Moreover, Mr. Shereshevsky used his social and religious standing to exploit members of his own community, the Orthodox Jewish community.  *Shereshevsky*, 2015 WL 13229502, at *1; Gov't Opp. at 2.  At sentencing, the son of one victim addressed Mr. Shereshevsky as follows:

> [Y]ou lied to my mother.  The fact that my mother was the matriarch of the Orthodox Jewish community in Norfolk, Virginia meant nothing to you other than access to more money to feed your scheme and lifestyle. You told an elderly woman that her investment would be treated just as you treated your mother's money.  I reviewed the list of victims . . . . While I found my mother's name, as well as the name[s] of other family members, people I know from Norfolk, the New York area and Florida, I could not find any investment in your mother's name.
>
> . . .
>
> [N]o one other than Joseph Shereshevsky himself created this terribly sad situation.  He stole from my mother and more than a thousand others including retirement funds and trust funds.  Likewise, countless synagogues and charitable causes invested money that was donated by their members and supporters that were dedicated to many religious purposes, including helping the poor, and they also have become your victims.

Sent. Tr. at 10, 15-16.

**2.    *Shereshevsky's Guilty Plea and Sentencing***

Mr. Shereshevsky was indicted for securities fraud and related crimes in 2008. *Shereshevsky*, 2015 WL 13229502, at *1.  He proved to be a most difficult client, as during the course of the proceedings he was represented by eleven different lawyers and the trial had to be adjourned several times.  *Id*.  He eventually decided to plead guilty, and did so on February 3, 2011, pleading guilty to one count of conspiracy to commit securities fraud, one count of securities fraud, and one count of mail fraud.  *Id*. at *2; Gov't Opp. at 3.

I sentenced Mr. Shereshevsky on July 18, 2011.  I determined that the total offense level was 35 and the Criminal History Category was III, resulting in an advisory

Guidelines range of 210 to 262 months.  Sent. Tr. at 44.  I noted that Mr. Shereshevsky

had two "serious prior convictions," including one for fraud that involved "significant

amounts of money."  *Id.*; *see* Gov't Opp. at 3 (describing prior convictions for attempted

grand larceny and conspiracy to commit bank fraud).  I reviewed some of the letters I

had received from victims, and, as noted above, I heard from the son of one victim.

Sent. Tr. at 44-51.  I observed as follows:

> I do not believe that Mr. Shereshevsky has been remorseful.  Today
> perhaps I think we saw the first signs of some remorse, but he resisted
> accepting responsibility until the end.  And for almost three years there
> were many delays as he protested his innocence, complained about his
> lawyers, and just in general refused to acknowledge his wrongdoing.

*Id*. at 52.  In the end, I sentenced Mr. Shereshevsky to the top of the Guidelines range,

262 months imprisonment.  *Id*.

Mr. Shereshevsky appealed his conviction and sentence and the Second

Circuit affirmed.  Gov't Opp. at 4.  In 2015, I denied his motion to set aside his sentence

pursuant to 28 U.S.C. § 2255.  *Shereshevsky*, 2015 WL 13229502, at *1.

**3.      *Shereshevsky's Request for Compassionate Release***

On April 21, 2020, Mr. Shereshevsky (through an email from his wife)

made a request to the Warden at FCI Otisville, where he is incarcerated, for

compassionate release.  Def. Mem. at 7; Gov't Opp. at 6 & Ex. C.  Mr. Shereshevsky

contended that "his advanced age, coupled with his preexisting conditions, including

high blood pressure, diabetes, shortness of breath, and a history of two heart attacks

and a total of six cardiac stents, leave him unusually susceptible to COVID-19 disease in your facility."  Def. Mem. at 7-8; Ex. C.  He argued that he should be released "to avoid [his] imminent exposure to and death from the virus in prison."  Ex. C.  By letter filed June 3, 2020, defense counsel summarized Mr. Shereshevsky's medical condition, as reflected in medical records recently released by FCI Otisville.  Def. Counsel Letter filed June 3, 2020.

Mr. Shereshevsky did not receive a response from the Warden to his request for compassionate release, and filed the instant motion on May 7, 2020.  Def. Mem. at 8.  The government opposed the motion by letter filed May 22, 2020.  Gov't Opp. at 1.  Mr. Shereshevsky filed reply papers on May 27, 2020.  Def. Reply Mem. at 1. The government has submitted a number of communications from victims, most opposing the motion, Gov't Opp. at 6 & Ex. A, and Mr. Shereshevsky submitted letters from two victims supporting release, Def. Counsel Letter filed June 4, 2020.

Mr. Shereshevsky is now 63 years old, Def. Mem. at 8, and has served almost twelve years of his 262-month sentence, *id*. at 2; Gov't Opp. at 2.

## *DISCUSSION*

**1.** *Applicable Law*

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the FSA, a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP") or the defendant.  *See United States v. Gil*, No. 90 Cr. 306 (KMW), 2020 WL

2611872, at *1 (S.D.N.Y. May 22, 2020); *United States v. Patterson*, No. 17 Cr. 118-6 (KPF), 2020 WL 2571044, at *2 (S.D.N.Y. May 21, 2020). A defendant may move for a reduction under the statute only upon exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). Administrative remedies are deemed exhausted if thirty days have "lapsed" from the receipt of the request by the BOP. *Id.*; *see, e.g., United States v. Shkreli*, No. 15 Cr. 637 (KAM), 2020 WL 2513521, at *1 (E.D.N.Y. May 16, 2020).

A court may reduce a sentence if it finds, "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction" and that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[1] In addition, in accordance with Sentencing Commission guidance, the court may not reduce a sentence unless it determines that the "defendant is not a danger to the safety of any other person or the community." *Id.* (quoting U.S.S.G. § 1B1.13(2)); *see Patterson*, 2020 WL 2571044, at *2.

The existence of "extraordinary and compelling reasons" for a reduction does not mean that a district court *must* release the defendant. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020). Rather, section 3582(c)(1)(A) provides that a court "may" reduce a sentence if "extraordinary and compelling reasons" are

---

[1] The court may also reduce a sentence where a defendant is at least 70 years old and has served at least 30 years in prison. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). That provision is not applicable here, as Mr. Shereshevsky is not 70 years old and has not served 30 years.

shown, and thus a district court has the discretion to grant or deny a request for compassionate release even if a defendant is otherwise eligible.  *See United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition . . . .").  If a defendant qualifies for a reduction, the court must decide whether to grant the reduction by weighing the factors set forth in section 3553(a), to the extent they are applicable.  *See id.* at *2.  These include:  the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to provide the defendant with needed medical care; and the need to avoid unwarranted disparities in sentences.  *See* 18 U.S.C. § 3553(a).

On a motion for compassionate release, the defendant bears the burden of showing that a reduction is warranted.  *See Patterson*, 2020 WL 2571044, at *2; *Ebbers*, 432 F. Supp. 3d at 426-27; *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

2.      *Application*

I assume that Mr. Shereshevsky is eligible for compassionate release.  As a threshold matter, he has exhausted his administrative remedies as thirty days have passed since he submitted his request to the BOP.  He certainly is in what would be considered the "vulnerable" population; as the government acknowledges, given his age, pre-existing conditions, and current state of health, there is a high risk of serious health consequences if he contracts COVID-19.  *See* Gov't Opp. at 7.

The parties dispute the degree of risk Mr. Shereshevsky faces from COVID-19 because he is in a prison facility.  He argues that FCI Otisville is "a mere 80 miles from New York City, the epicenter of the COVID-19 pandemic," and that, as of the filing of the motion on May 7, 2020, ten staff members there were infected with the virus.  Def. Mem. at 2.  The government contends, on the other hand, that significant improvements have been made at FCI Otisville as the BOP has taken concrete steps to address the pandemic.  Gov't Opp. at 4-5.  The government notes that as of the filing of its opposition on May 22, 2020, FCI Otisville, with approximately 612 inmates, had zero inmates and only one staff member confirmed with COVID-19.  *Id*. at 5.

Mr. Shereshevsky probably has the better of the argument, as there would surely be less of a risk of infection at his home than there is in the crowded and confined quarters of a prison.  I need not resolve this factual dispute, however, for even assuming Mr. Shereshevsky qualifies for a sentence reduction because he has

established extraordinary and compelling circumstances, I conclude that the section

3553(a) factors weigh against granting compassionate release.

First, the nature and seriousness of the offense weigh heavily against

compassionate release.  I supervised the criminal case for some three years, and I

supervised the parallel civil case brought by the SEC for many more years.  Mr.

Shereshevsky engaged in an egregious fraud, one that spanned some five years and

impacted hundreds of people, many of whom I heard from in both cases, including

small investors who lost their homes or pensions or savings.  There was a human toll,

and as Mr. Shereshevsky acknowledged at sentencing, "he destroyed lives."  Sent. Tr. at

47.

Second, Mr. Shereshevsky's history and characteristics also weigh heavily

against a sentence reduction.  This was his third felony conviction, and he was able to

avoid serving any jail time for the first two convictions.  *See* Gov't Opp. at 3, 9.  There

was a shameful breach of trust, as he often used religion to take advantage of others,

including members of his own community.  And as I noted above, in my mind he was

never truly remorseful.

Third, other factors weigh against granting the motion.  A sentence

reduction to time served would mean that Mr. Shereshevsky would serve less than

twelve years of a 262-month sentence.  Given the seriousness of his crime, such a

10

sentence reduction would undermine respect for the law and the need for a just sentence, and the sentence I imposed would lose much of its deterrent effect.

Fourth, given his criminal record, the seriousness and nature of his conduct in this case, and his lack of remorse, I am not persuaded that Mr. Shereshevsky no longer presents a threat to the public.

Finally, in what is essentially a disparity argument, Mr. Shereshevsky contends that other inmates -- including high-profile individuals like Michael Cohen and Paul Manafort as well as younger individuals -- have been granted sentence reductions because of the pandemic. *See* Def. Reply Mem. at 2-3 (citing cases). I am not persuaded. These motions for compassionate release, of course, must be considered on a case-by-case basis. Here, in light of all the circumstances and the statutory factors, in my view Mr. Shereshevsky is not deserving of compassionate release.

## *CONCLUSION*

For the reasons set forth above, Mr. Shereshevsky's motion for compassionate release is DENIED.

SO ORDERED.

Dated:      New York, New York
            June 16, 2020

                                         s/Denny Chin
                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting by Designation

11